UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR BLAJOS,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>          Defendant. | CASE NO. 1:14-CV-1317-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER<br><br>(Doc. 13) |

Plaintiff Hector Blajos, by his attorney, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental insurance benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.

**I.     Background**

   A. Procedural History

In March 2006, Plaintiff filed an application for supplemental security income, alleging an onset of disability date of January 11, 2006. An administrative law judge denied Plaintiff's claim in 2008. After filing an appeal in the District Court, the claim was remanded and was denied by a different administrative law judge on April 26, 2011. Plaintiff did not seek reconsideration or

appeal of this decision.

In June 2011, Plaintiff filed a new application for supplemental security income, alleging an onset of disability date of January 11, 2006, but amended it at the hearing to June 6, 2011, the date of application. The Commissioner initially denied the claims on November 18, 2011, and upon reconsideration again denied the claims on March 16, 2012. On March 20, 2012, Plaintiff filed a timely request for a hearing.

On November 29, 2012, and represented by counsel, Plaintiff appeared and testified at a hearing presided over by Robert E. Lowenstein, Administrative Law Judge ("the ALJ"). See 20 C.F.R. 404.929 et seq. An impartial vocational expert, Jose L. Chaparro ("the VE"), also appeared and testified.

On January 2, 2013, the ALJ denied Plaintiff's application. The Appeals Council denied review on October 23, 2014. The ALJ's decision thus became the Commissioner's final decision. See 42 U.S.C. § 405(h). On August 21, 2014, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B. Plaintiff's Testimony

At the administrative hearing, Plaintiff was forty-eight years old. He was single, without children, and lived with his cousin and her husband. Plaintiff had a valid driver's license and drove every day for about an hour. He visited his family but did not have any other hobbies.

Plaintiff testified that he saw his "primary doctor," Dr. Hansen,[1] every six months for sleep apnea and high blood pressure. He saw his "back doctor" twice a year. At the time of the hearing he was taking several medications, including hydrocodone with acetaminophen and tramadol for pain. He experienced drowsiness and nausea as side effects of these medications.

Plaintiff testified that he could stand for ten to fifteen minutes and could walk about half a mile. In an eight-hour day he could be on his feet standing or walking for a total of an hour. He could sit for an hour or two at a time, for a total of two or three hours in an eight-hour day. He testified that he could occasionally bend, stoop, and climb stairs but with difficulty. He testified that he could lift ten pounds but only one or two pounds repeatedly. He had problems using his left

---

[1] Caroline L. Hansen is a physician's assistant.

hand, and it would swell and shake after carrying groceries. He had weakness in his left hand when trying to open something.

Plaintiff testified that his lower back pain was the worst of his problems, and it was constantly a ten out of ten, on a scale of one to ten with ten being the "worst possible pain imaginable." He testified that it was always at a ten, even without aggravation. He testified that his pain may be at seven out of ten, and never is better than seven. When the pain goes up to ten, there is no way to bring it down. Plaintiff's doctor told him he was not a candidate for surgery. He testified that he also had pain in his buttocks, which was eight to ten out of ten. Plaintiff testified that he had carpal tunnel syndrome.

Plaintiff testified that he dresses, bathes, cooks, shops, does dishes, does laundry, makes his bed, and vacuums with difficulty. He goes to the grocery store.  He does not clean, take out the garbage, or do yard work. On a typical day, he gets up, takes a shower, watches TV, visits his mother, eats dinner with his mother, and goes home. While he visits his mother, he talks to her and watches TV. During the day, he lies down and takes naps because of his back pain.

Plaintiff testified that he completed part of tenth grade. He could only read simple words. His cousin helped him take care of social security paperwork. He was able to read a menu at a restaurant and was able to do simple addition and subtraction. He did sanitation work at several bakeries between 1982 and 1999. From 1999 and 2004, Plaintiff could not find work after the bakery was shut down. From 2004 to 2005 he was a loader at a bakery, loading bread and tortillas. From September to December 2005, Plaintiff did production work at Zacky Farms, hanging turkeys on shackles. He stopped working in December 2005 because he hurt his back and arm. He settled a workers compensation case shortly after. He had not made any attempts to find work and had not gone through vocational rehabilitation.

On examination by his attorney, Plaintiff testified that he could use his left hand repetitively for five to ten minutes at a time, after which it would swell and shake. He would need about an hour break before using it repetitively again. He testified that none of the treatments, including epidurals and use of a TENS unit, helped his back pain. He testified that he could concentrate or focus for about four or five minutes at a time, before losing focus because his back

1  started to hurt him. He would need a fifteen to twenty minute break before trying to focus again.

2  Plaintiff testified that three to four times a year his pain prohibited him from any
3  movement. It took thirty to forty-five minutes to go away. His doctor just gives him stronger
4  medication. For sleep apnea, Plaintiff used continuous positive airway pressure ("CPAP"), which
5  helped him sleep, but still was unable to sleep two or three times a month.

### C. Relevant Medical Record

Plaintiff received regular medical care from Fresno Community Medical Centers. Between the alleged date of disability and the hearing date, Plaintiff had two medical appointments at which he complained of back pain. On June 17, 2011 he saw Brian Clague, M.D., who noted that an April 2011 MRI revealed an improved disc bulge, but that was still contacting a root. AR 456. Dr. Clague also noted that epidurals did not help him. By July 27, 2011, Plaintiff had completed two physical therapy sessions with physical therapist Anna McDonald. AR 436. He reported to her that his pain was ten out of ten and nothing helped his pain, including cold packs, heat, exercise, stretching, and a TENS unit. He was discharged from physical therapy. On September 16, 2011, Plaintiff saw Dr. Clague, who noted that he did not appear to be a surgical candidate, although his back pain was not better with a corset, TENS unit, physical therapy, or epidurals. AR 431-432.

Plaintiff also saw physician's assistant Caroline Hansen every one to two months from July 2011 to January 2012 complaining of fatigue and hypertension. She reported that he tested negative for carpal tunnel syndrome, and that his back pain was constantly ten out of ten. Ms. Hansen ordered CPAP for his fatigue.

Plaintiff also had medical records from February and March 2012 about an unrelated medical issue. The record does not contain medical records beyond March 2012.

On August 25, 2011, Fariba Vesali, M.D., conducted a comprehensive orthopedic evaluation on Plaintiff and provided a written opinion. AR 357-360. Dr. Vesali observed that Plaintiff was alert and not in acute distress. He wore a corset and left carpal tunnel splint, which he removed for the examination. Plaintiff did not have difficulty signing his name, picking up a paper clip from Dr. Vesali's hand, or getting on and off the examination table. Plaintiff walked with a normal gait and did not use an assistive device for ambulation. Dr. Vesali's findings were mostly

normal, other than tenderness around the lower spine. Dr. Vesali found Plaintiff negative for carpal tunnel syndrome. Dr. Vesali diagnosed Plaintiff with chronic low back pain. He did not feel that the condition would impose any limitations for twelve continuous months. Specifically, Dr. Vesali opined that Plaintiff had no limitations in walking, standing, sitting, and lifting and carrying, and no postural, manipulative, or environmental limitations.

On November 8, 2011, Sadda V. Reddy, M.D., reviewed Plaintiff's file and completed a physical residual functional capacity assessment. AR 362-371. Dr. Reddy concluded that no significant or material changes had occurred since the April 2011 ALJ decision, and adopted the April 2011 ALJ's findings. Dr. Reddy opined that Plaintiff had the RFC adopted by the ALJ in this case. On March 15, 2012, J. Linder, M.D., reviewed the evidence and affirmed the April 2011 RFC finding.

### D. Vocational Expert Testimony

At the administrative hearing, the VE classified Plaintiff's past work as industrial cleaner (DOT # 381.687-018, medium (performed light, SVP 2) and poultry hanger (DOT # 525.687-078, medium, SVP 1). The ALJ asked the VE to assume a hypothetical person of Plaintiff's same age, education, and work experience, was able to walk, stand, and sit without limitation, did not need an assistive device for ambulation, could lift and carry without limitation, and had no postural, manipulative, or environmental limitations. The VE opined that such a person could perform all of Plaintiff's past relevant work.

The ALJ then directed the VE to assume a second hypothetical person who could lift fifty pounds occasionally and ten pounds frequently; stand and walk six hours out of an eight-hour work day; sit six hours out of an eight-hour work day; push and pull without limitation; frequently climb ladders, ropes or scaffolds; continually climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; frequently reach overhead bilaterally; continuously reach in other directions; and continually handle, finger, and feel. The VE opined that such a person could perform Plaintiff's past position as industrial cleaner, only as performed.

Plaintiff's attorney directed the VE to assume the first hypothetical person, but would need an additional unscheduled break of at least one to two hours. The VE opined that such an

individual could not perform any work.

Plaintiff's attorney then directed the VE to assume a person with Plaintiff's vocational factors, but could only stand ten to fifteen minutes at a time and a total of one hour in an eight-hour workday, walk half a mile at a time, sit one hour at a time for a total of three hours in a work day, lift ten pounds, repeatedly lift one to two pounds, needed to rest and lie down for approximately four hours a day, and could not concentrate in two-hour increments. The VE opined that such an individual could not perform any work.

Plaintiff's attorney directed the VE to assume the second hypothetical person as directed by the ALJ, but could only concentrate four to five minutes and would be off task fifteen to twenty minutes. The VE opined that such an individual could not perform any work.

E. Disability Determination

After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of disability. The ALJ found that Plaintiff had the following severe, medically determinable impairments: degenerative disc disease of the lumbar spine with resultant low back pain and left carpal tunnel syndrome. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. He found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 416.967(c), except he could lift/carry fifty pounds occasionally and twenty pounds frequently; stand/walk for six hours in an eight-hour work day; sit for six hours in an eight-hour work day; frequently climb ladders, ropes, and scaffolds; continuously balance, stoop, kneel, crouch, and crawl; frequently perform bilateral overhead reaching and continuously reach in all other directions; and continuously handle, finger, and feel. The ALJ found that Plaintiff was capable of performing his past relevant work as an industrial cleaner. Hence, he determined that Plaintiff was "not disabled."

**II. Legal Standard**

A. The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to

engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g).

B. Standard of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). If an ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must uphold the ALJ's determination that the claimant is not disabled. *See, e.g., Ukolov v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id*.

## III. Discussion

Plaintiff contends that the ALJ erred in considering Plaintiff's testimony. He argues that the ALJ failed to articulate specific and legitimate reasons in rejecting his subjective symptom testimony. He argues that the ALJ's credibility determination was insufficiently specific and not supported by the record.

A. Applicable Law

The Ninth Circuit established two requirements for a claimant to present credible symptom testimony: the claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Where an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence

of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because it is unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's subjective symptom testimony so long as it is not the only reason for discounting her testimony. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Although the credibility analysis need not be extensive, the ALJ must provide some reasoning in order to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

    B.  Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC analysis. The ALJ based his credibility determination on 1) Plaintiff's activities of daily living, which were not as limited to the extent one would expect given the complaints of disabling symptoms and limitations, 2) Plaintiff's conservative and routine medical treatment, 3) that Plaintiff's level of pain inconsistent with the medical evidence, 4) Plaintiff's ability to participate in the hearing without being distracted and without overt pain behavior, and 5) the lack of opinions from treating or examining physicians indicating that Plaintiff has limitations greater than those determined by the ALJ.

    *1.  Activities of Daily Living*

Here, the ALJ noted that Plaintiff could drive every day, groom, wash dishes, and make his bed. The ALJ does not explain how these daily activities contradict Plaintiff's credibility. Plaintiff testified that he could sit for an hour at a time, that he could stand for about fifteen minutes at a time, and that he could use his left hand repetitively for five to ten minutes. It seems that driving every day, grooming, washing dishes, and making his bed could be performed with his alleged limitations. Therefore, the ALJ's finding that Plaintiff's daily activities question his credibility is not convincing. However, the ALJ gives sufficient other reasons to discount Plaintiff's credibility.

    *2.  Conservative Treatment*

The ALJ noted that Plaintiff received only routine, conservative treatment and has not had surgery. In 2011, Plaintiff only saw his physician for back pain twice and there is no record that he saw his physician for back pain at all in 2012. Although Plaintiff consistently complained that his pain was a level ten out of ten and that no courses of action had helped, Plaintiff's treatment

remained very conservative. Plaintiff took medication, wore a corset, and used a TENS unit to alleviate his pain, and insisted that nothing helped the pain. He did not attempt to adjust his medication or see a different physician. This reason, taken with others, is sufficiently specific, clear, and convincing and supported by the record.

### 3. *Inconsistency with the Objective Medical Evidence*

The ALJ noted that physical examinations showed no remarkable findings, and the medical evidence only showed mild medical conditions related to his low back pain and left carpal tunnel syndrome. The ALJ discussed treatment notes from Fresno Community Medical Center showing an MRI with an extruded disc. The treatment notes from the relevant time period also indicate that Plaintiff tested negative for carpal tunnel syndrome. Further, the ALJ noted that Plaintiff had no neurological, reflex, or sensory deficits and no restriction in ambulation. Plaintiff's physical examinations were essentially within normal limits. Hence, the ALJ's finding that the objective medical evidence does not support Plaintiff's allegations of severe constant pain, considered along with other reasons, is sufficiently specific, clear, and convincing and supported by the record.

### 4. *Demeanor at the Hearing*

The ALJ noted that Plaintiff was able to participate in the hearing without being distracted. He did not have overt pain behavior, and he was able to respond to respond to questions appropriately. Social Security Ruling 96-7p provides: "In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p. Plaintiff testified that his pain was constantly at the highest possible level and that he could not concentrate for more than short periods at a time. However, the ALJ observed that during the hearing, Plaintiff was not in overt pain and remained focused throughout the hearing. An ALJ may use ordinary techniques of credibility evaluation. Hence, his observation and opinion of Plaintiff's demeanor, considered along with other reasons, is sufficiently specific, clear, and convincing and supported by the record.

*5. Physician's Opinions*

Consultative examiner Dr. Vesali and two state agency physicians opined that Plaintiff was able to perform work. Dr. Vesali found that Plaintiff had no limitations. Testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms may be considered in the credibility analysis. The three physicians giving opinion evidence opined that Plaintiff's symptoms did not preclude him from performing at least medium work. Hence, the ALJ's finding that the opinions from physicians did not indicate that plaintiff had limitations greater than those found by the ALJ is sufficiently specific, clear, and convincing and supported by the record.

In sum, the ALJ found that Plaintiff's medical record, including conservative treatment, did not sustain allegations of disabling impairments, Plaintiff's demeanor at the hearing was inconsistent with allegations of constant severe pain and inability to focus, and the physician's opinions did not support severe restrictions. Taken together, these reasons are sufficiently specific, clear, and convincing grounds which are supported by substantial evidence in the record to discount Plaintiff's credibility.

## IV.    Conclusion and Order

For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards and that substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   **February 10, 2016**             **/s/ Sandra M. Snyder**
                                           UNITED STATES MAGISTRATE JUDGE